UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NIDA NOOR and WASI TAHIR,<br><br>*Plaintiffs,*<br><br>v.<br><br>SYNCHRONY BANK, KENAN INVESTMENTS INC. d/b/a CMA FLOORING & DESIGN d/b/a CARPET MILLS OF AMERICA, and BADER M. OBEID,<br><br>*Defendants.* | Civil Action No.: 26-2500<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Nida Noor and Wasi Tahir, by and through their undersigned counsel, allege as follows upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters:

### PRELIMINARY STATEMENT

1.      This is a consumer-protection action arising out of a home-improvement transaction gone badly wrong. Plaintiffs Nida Noor and Wasi Tahir, a married couple residing in Carrollton, Texas, hired Defendant Kenan Investments Inc. d/b/a CMA Flooring & Design d/b/a Carpet Mills of America ("CMA Flooring") to remodel their kitchen, paying a $2,500.00 deposit by check.

2.      On August 2, 2025, at CMA Flooring's showroom, Ms. Noor completed a Synchrony Bank credit application on the contractor's computer. That same day, CMA Flooring caused $25,000.00—nearly the entire contract price—to be charged to the newly opened account, without Plaintiffs' authorization, before any work began, before any materials were delivered, and before any services were performed. No demolition, cabinetry, countertop,

backsplash, plumbing, drywall, paint, carpet, gas-line, or other contracted work was ever performed, and no materials were ever delivered.

3.      Beginning on September 15, 2025, Ms. Noor disputed the $25,000.00 charge with Defendant Synchrony Bank ("Synchrony") in writing, and she renewed that dispute at least six times over the following nine months. Synchrony denied the disputes with a series of shifting, boilerplate rationales; never investigated the dispositive questions of whether Ms. Noor ever authorized the charge and whether the contracted goods and services were ever delivered; and issued and then reversed a provisional credit without explanation.

4.      Plaintiffs bring this action under the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666 et seq., and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., including 15 U.S.C. § 1643, together with their implementing regulation, Regulation Z, 12 C.F.R. Part 1026; under the Texas Deceptive Trade Practices–Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 et seq. ("DTPA"); and under the common law for breach of contract and breach of the duty of good faith and fair dealing.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over Plaintiffs' TILA and FCBA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1640(e).

6.      This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

7.      This Court may grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this

District, including the underlying transaction at CMA Flooring's showroom in Carrollton, Dallas County, Texas, and because Defendant CMA Flooring resides in this District.

## PARTIES

9.      Plaintiff Nida Noor is a natural person residing in Carrollton, Texas. Ms. Noor is the account holder on the Synchrony credit account at issue, which was opened for personal, family, and household purposes—namely, the remodeling of her family's home kitchen—and which was never used for business or commercial purposes. Ms. Noor is a "consumer" and an "obligor" within the meaning of TILA and Regulation Z.

10.      Plaintiff Wasi Tahir is a natural person residing in Carrollton, Texas. Mr. Tahir is Ms. Noor's spouse, is a party to the remodeling transaction with CMA Flooring, and paid, with Ms. Noor, the $2,500.00 deposit for the remodeling project.

11.      Defendant Synchrony Bank is a bank with offices at 170 West Election Road, Suite 125, Draper, Utah 84020 and a mailing address registered with the Texas State Comptroller of: P.O. Box 120608, Saint Paul, MN 55112-0012. Synchrony is the issuer of the "Mohawk/Synchrony Home" credit account at issue and is a "creditor" and "card issuer" within the meaning of TILA, the FCBA, and Regulation Z. Synchrony regularly extends consumer credit and does business throughout Texas, including in this District.

12.      Defendant Kenan Investments Inc. d/b/a CMA Flooring & Design d/b/a Carpet Mills of America is a Texas corporation with its principal place of business at 2305 E. Belt Line Rd., Ste. 120, Carrollton, Texas 75006.  Kenan Investments, Inc. can be served by service on its registered agent, Bader M. Obeid at 2305 E. Beltline Rd, Ste 120, Carrollton, Texas 75006.

13.      Defendant Bader M. Obeid is a natural person and can be found at 627 Alexandra Avenue, Richardson, Texas 75081. Mr. Obeid is the president and registered agent of Kenan Investments Inc. and at all relevant times acted for himself and as the owner, agent, and principal

3

of CMA Flooring. Mr. Obeid personally negotiated the remodeling transaction with Plaintiffs, personally demanded that Plaintiffs open the Synchrony credit line, and personally admitted fault and promised Plaintiffs a full refund.

## FACTUAL ALLEGATIONS

### A. The Kitchen-Remodel Contract and the $25,000.00 Charge

14. On or about July 15, 2025, Plaintiffs entered into a written agreement with CMA Flooring for a kitchen remodel at their home under Invoice No. CG500123. The original contract price was $28,200.00, and Plaintiffs paid a $2,500.00 deposit by check.

15. The contracted scope of work included demolition, cabinet installation, countertop templating, fabrication, and installation, backsplash, plumbing, drywall, paint, pad replacement, carpet repair, gas-line work, and shelving.

16. CMA Flooring failed to begin the work. On August 2, 2025, after numerous failed attempts to reach CMA Flooring, Plaintiffs visited its Carrollton showroom. There, CMA Flooring's principal, Bader Obeid, demanded that Plaintiffs open a credit line if they wanted the project to move forward. At Mr. Obeid's request and on his computer, Ms. Noor completed a Synchrony financing application as a precautionary financing option in case additional funds became necessary during the project.

17. Synchrony approved the application the same day and issued Ms. Noor a "Mohawk/Synchrony Home" store credit account (originally ending 5985, later reissued ending 0054) with a credit limit of $25,000.00. The account is an open-end consumer credit plan. The purchase was placed on a "Deferred Interest/No Interest If Paid In Full" promotion.

18. That same day, August 2, 2025, CMA Flooring caused the entire $25,000.00—consuming the account's full credit limit—to be charged to Ms. Noor's account. Plaintiffs did

4

not authorize the charge, and neither CMA Flooring nor Synchrony has ever produced a signed authorization for it.

19.    Ms. Noor's first account statement, with a closing date of August 25, 2025, reflected a $25,000.00 balance and a minimum payment of $875.00, and disclosed a deferred-interest promotional expiration date of August 25, 2026, after which interest at 34.99% APR would be assessed retroactively if the promotional balance were not paid in full.

**B. Plaintiffs Discover the Charge; CMA Flooring Performs No Work**

20.    On September 3, 2025, at a meeting at Plaintiffs' home, Mr. Obeid verbally accepted responsibility for the project delays and agreed to proceed at a reduced cost. On September 6, 2025, Mr. Obeid sent a revised contract totaling $24,850.00, which credited the $2,500.00 deposit and made no mention of any $25,000.00 charge to the Synchrony account. At that time, Plaintiffs remained unaware of the charge.

21.    On or about September 8, 2025, Plaintiffs discovered the $25,000.00 charge upon reviewing the account statement.

22.    Mr. Tahir returned to CMA Flooring's showroom on September 9 and September 12, 2025. During the September 12 visit, Mr. Obeid promised to start the project on September 15, 2025 and to refund the unauthorized charge.

23.    Instead, on September 15, 2025, Mr. Obeid's associate called to postpone the project indefinitely and provided no explanation regarding the refund. Plaintiffs then sent CMA Flooring a formal refund and cancellation request by email and text message.

24.    No goods were ever delivered and no services were ever performed under the contract. No demolition occurred; no cabinets were installed; no countertops were templated, fabricated, or installed; and no backsplash, plumbing, drywall, paint, pad replacement, carpet repair, gas-line work, or shelving was performed.

**C. Ms. Noor's Timely Disputes and Synchrony's Shifting Denials**

25.     On September 15, 2025—twenty-one days after the first statement closed—Ms. Noor submitted her first dispute of the $25,000.00 charge to Synchrony, supported by a twenty-one-page package of documentation. The package included Plaintiffs' written narrative stating that, "[w]ithout our knowledge or authorization, CMA subsequently billed $25,000 to our Synchrony Bank credit line, which we had only agreed to open."

26.     Synchrony received, acknowledged, and investigated that dispute. On or about October 8, 2025, CMA Flooring submitted a response letter and invoice to Synchrony. The "services" CMA Flooring claimed to have completed were exclusively administrative and preparatory items—contract setup, insurance documentation, material ordering, and design planning—not the contracted renovation work.

27.     By letter dated October 15, 2025, Synchrony denied Ms. Noor's dispute, stating: "The disputed transaction(s) were charged prior to the cancellation date and are subject to the merchant's cancellation policy." The letter announced that "[w]e have closed the dispute" and that the sale was "now included in the balance subject to interest charges."

28.     On October 30, 2025, Ms. Noor submitted a second, twenty-five-page written dispute to Synchrony containing a detailed narrative and enclosing, among other things, the CMA Flooring invoice, the contract terms and scope of work, and property records.

29.     The merchant's cancellation policy was responsive to neither of the grounds Ms. Noor's disputes actually raised. Ms. Noor's disputes asserted both that CMA Flooring had charged her account without authorization and that the goods and services for which she was charged were never delivered—demanding, among other things, that Synchrony "[c]ancel and reverse the full $25,000 unauthorized charge immediately" and explain "how Mr. Bader Obaid

6

(CMA Flooring) was able to process charges on our account without authorization, and without providing any materials or services."

30.    On November 4, 2025, Plaintiffs filed a police report concerning the transaction. Plaintiffs informed Synchrony of the police report in their December 20, 2025 dispute and later delivered a copy of the report to Synchrony by fax with their March 2026 supplemental dispute.

31.    By letter dated November 20, 2025, Synchrony denied the dispute on a second, different ground, stating: "The provider has provided a signed application and sales invoice which includes the terms for financing for the transaction in question. By signing/acknowledging the documents, you agreed to the terms." Synchrony did not enclose any signed charge authorization, and again did not address whether any goods or services had been delivered.

32.    On November 24, 2025, Ms. Noor submitted a third written dispute to Synchrony, delivered by fax on December 1, 2025. Ms. Noor's letter requested a full chargeback and stated that the contractor had received approximately 110% of the contracted amount upfront while failing "to perform any work, provide any materials or deliver any of the services listed in the agreement." The submission also enclosed medical documentation concerning Ms. Noor's then-ongoing pregnancy and the pregnancy-related difficulties she was encountering due to not having a kitchen.

33.    By letter dated December 8, 2025, Synchrony denied the dispute on a third, different ground, stating: "We have been advised by the merchant that they have attempted to contact you to resolve the quality concern. Please contact and continue to work with the merchant." This was not a "quality" dispute; no goods or services had been provided at all.

34.    On December 20, 2025, Ms. Noor submitted a fourth dispute package, which included letters dated December 20, 26, and 29, 2025. On December 31, 2025, Ms. Noor sent

Synchrony a formal written billing-error notice citing 15 U.S.C. § 1666 via certified mail, and filed a complaint against Synchrony with the Consumer Financial Protection Bureau (No. 251231-27333900).

35.     By letter dated January 7, 2026, Synchrony issued a fourth denial:

"Based on our investigation, a credit will not be issued for the sale of $25000.00 for the following reasons: We have been advised by the merchant that they have attempted to contact you to resolve your concerns. Please contact and work with the merchant. . . . Please keep in mind the initiating a dispute on this transaction again may cause you to receive a letter acknowledging the receipt of your dispute and the start of an investigation, however no investigation will be conducted unless you submit new information regarding your dispute."

36.     By separate letter also dated January 7, 2026, Synchrony's "Fraud Solutions Team" announced the conclusion of a fraud claim on the account, asserting that it "found no fraudulent activity" because "[t]he purchases in question were pending charges not billed to your account." In fact, the $25,000.00 charge had been billed to Ms. Noor's account since August 2025 and remained on the account at that time.

37.     On January 8, 2026, Ms. Noor faxed a notice of FCBA violations to Synchrony's legal department, and in January 2026 filed a second CFPB complaint (No. 260120-27960161).

**D. The Provisional Credit and Its Unexplained Reversal**

38.     On January 14, 2026, Synchrony applied provisional credits of $10,000.00 and $15,000.00—the full $25,000.00—to Ms. Noor's account. Her January 25, 2026 statement reflected a $0.00 balance and a $0.00 minimum payment.

39.     On January 26 and 27, 2026, without any clear written explanation, Synchrony reversed the provisional credits and restored the full $25,000.00 balance to the account.

40.     By letter dated January 20, 2026, Synchrony issued a fifth denial, repeating verbatim its December 8, 2025 "quality concern" rationale. On January 28, 2026, Ms. Noor submitted a fifth, thirty-seven-page regulatory dispute package to Synchrony, enclosing the

FCBA violation notice, the CFPB complaints, and the account agreement. By letter dated February 25, 2026, Synchrony issued a sixth denial, again repeating the same "quality concern" rationale verbatim.

41.    By letter dated March 2, 2026, responding to both CFPB complaints, Synchrony confirmed that it had responded to Ms. Noor's disputes on October 15, 2025, November 20, 2025, December 8, 2025, January 7, 2026, January 20, 2026, and February 25, 2026, and determined that "no billing error has occurred." Synchrony characterized the dispute as "a service guarantee issue" and disclaimed responsibility, stating: "Synchrony is merely the provider of the credit card. This is an issue strictly between you and the provider where the product or services were purchased or rendered.

42.    Across seven responses, Synchrony offered at least five different rationales—a cancellation policy, a signed application, a "quality concern," an instruction to "work with the merchant," and its status as "merely the provider of the credit card"—but no response ever addressed the dispositive questions raised by Ms. Noor's disputes: whether Ms. Noor ever authorized the actual charges at issue and whether the goods and services had been provided.

**E. The Merchant's Admission and the March 10, 2026 Supplemental Dispute**

43.    On March 2, 2026, Mr. Obeid met with Plaintiffs and, in the presence of a third-party witness, acknowledged fault, apologized, and agreed to refund all of Plaintiffs' money, including the $2,500.00 deposit and the $25,000.00 financing charge. No refund was ever issued, and CMA Flooring thereafter ceased communications.

44.    On March 10, 2026, Ms. Noor opened a supplemental billing dispute with Synchrony by telephone and then submitted, by both fax and mail, approximately eighteen pages of supporting documentation, including a witness affidavit concerning the merchant's admission, a copy of the November 4, 2025 police report, and a Notice of Intent to File Arbitration.

Synchrony acknowledged receipt, reopened the dispute, and deferred Ms. Noor's payment obligations through May 23, 2026. However, the dispute itself was closed by Synchrony without a written decision.

45. On March 26, 2026, through counsel, Plaintiffs sent CMA Flooring and Mr. Obeid a formal demand and pre-suit notice under the DTPA, Tex. Bus. & Com. Code § 17.505, and the Texas Residential Construction Liability Act, demanding a refund of $29,000.00, including the deposit, the financing charge, and attorney's fees. The certified mailing was refused or unclaimed, although email and regular-mail delivery occurred. CMA Flooring never responded.

46. CMA Flooring and Mr. Obeid offered several proposed resolutions, none of which included any reference to a specific sum certain to be refunded, nor to any deadline for payment or any consequence for non-payment.

**F. Plaintiffs' Damages**

47. On the May 24 – July 24, 2026 statements, Synchrony has continued to hold Ms. Noor liable for the full $25,000.00 balance, with a minimum payment of $875.00 and accrued deferred interest of $1,914.35. The deferred-interest promotion expires on September 24, 2026, after which deferred interest at 34.99% APR will be assessed retroactively on the promotional balance if it is not paid in full.

48. Plaintiffs paid CMA Flooring a $2,500.00 deposit by check for which they received nothing. Together with the $25,000.00 financing charge, CMA Flooring holds $27,500.00 of Plaintiffs' money without having performed any work whatsoever.

49. Defendants' conduct has caused Plaintiffs significant emotional distress, stress, anxiety, inconvenience, and hardship, as well as an enormous loss of time and effort, including six dispute submissions to Synchrony, two CFPB complaints, an FTC complaint, a police report,

10

and a complaint to the state Attorney General. Among other things, Plaintiffs' family—including during Ms. Noor's pregnancy—was left without a functional kitchen for an extended period.

## COUNT I

## VIOLATIONS OF THE FAIR CREDIT BILLING ACT, 15 U.S.C. § 1666 ET SEQ.

### (By Plaintiff Noor Against Defendant Synchrony Bank)

50.     Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

51.     The Synchrony account is an open-end consumer credit plan; Ms. Noor is the obligor on that account; and Synchrony is the creditor. The account was opened for personal, family, and household purposes and was never used by Ms. Noor for business or commercial purposes.

52.     A charge that the obligor did not authorize, and a charge for goods or services that were not delivered in accordance with the parties' agreement, each constitutes a "billing error" under 15 U.S.C. § 1666(b) and Regulation Z. The unauthorized $25,000.00 charge for a kitchen remodel that was never performed, and for materials that were never delivered, is such a billing error.

53.     Ms. Noor provided Synchrony with written notice of the billing error within sixty days of Synchrony's transmission of the first statement reflecting the charge, including her September 15, 2025 dispute, which Synchrony received, investigated, and denied.

54.     Synchrony violated the FCBA and Regulation Z in that, among other things, it: (a) failed to conduct a reasonable investigation of the billing error before determining that no error occurred; (b) failed to correct the billing error and credit Ms. Noor's account; (c) failed to provide a written explanation setting forth the reasons why it believed the account was correct, instead issuing boilerplate denials with shifting rationales that never addressed authorization or

11

non-delivery; (d) reversed the provisional credit and resumed billing and collection of the disputed amount, including minimum-payment demands and interest accrual, while the billing error remained uncorrected and disputes remained pending; and (e) threatened that future disputes would not be investigated absent new information.

55.     A reasonable investigation would have included, at minimum: considering all of the evidence presented by the consumer; determining whether the $25,000.00 charge was ever authorized—not merely whether the account was opened; determining whether the contracted goods and services were ever delivered; considering the merchant's own submissions, which on their face indicated that the kitchen had never been renovated; and considering the evidence that the merchant had admitted fault and agreed to a full refund. Synchrony did none of these things.

56.     By operation of 15 U.S.C. § 1666(e), Synchrony's failure to comply with the FCBA's requirements forfeits its right to collect the disputed amount, including finance charges thereon.

57.     Pursuant to 15 U.S.C. § 1666i, Ms. Noor is also entitled to assert against Synchrony all claims and defenses arising out of the underlying transaction with CMA Flooring, including non-delivery, breach, and fraud.

58.     As a result of Synchrony's violations, Ms. Noor has suffered damages, including the amounts for which she has wrongfully been held liable, deferred interest, and actual damages including both pecuniary damages and damages for emotional distress, pain, and suffering.

59.     Ms. Noor is entitled to recover her actual damages; statutory damages of twice the finance charge in connection with the transaction, in an amount of not less than $500.00 and not greater than $5,000.00; declaratory relief; and her reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1640.

## COUNT II

### VIOLATION OF THE TRUTH IN LENDING ACT, 15 U.S.C. § 1643

### (By Plaintiff Noor Against Defendant Synchrony Bank, in the Alternative)

60.     Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

61.     Ms. Noor completed the Synchrony credit application as a precautionary financing option. She did not authorize CMA Flooring to charge $25,000.00 to the account on August 2, 2025.

62.     Under 15 U.S.C. § 1643(a), a cardholder's liability for unauthorized use of a credit card may not exceed $50.00, and under 15 U.S.C. § 1643(b), the card issuer bears the burden of proving that a use was authorized.

63.     The unauthorized charge at issue exceeds $50.00. By holding Ms. Noor liable for the full $25,000.00 charge, together with interest and fees, Synchrony has imposed and continues to impose liability on Ms. Noor in excess of the statutory maximum, in violation of 15 U.S.C. § 1643.

64.     As a result of Synchrony's violation, Ms. Noor has suffered damages, including actual damages comprising both pecuniary damages and damages for emotional distress, pain, and suffering.

65.     Ms. Noor is entitled to recover her actual damages; statutory damages of twice the finance charge in connection with the transaction, in an amount of not less than $500.00 and not greater than $5,000.00; a declaration that she is not liable for the disputed charge or associated interest and fees; and her reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1640.

//

//

13

## COUNT III

## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES–CONSUMER PROTECTION ACT, TEX. BUS. & COM. CODE § 17.41 ET SEQ.

**(By Both Plaintiffs Against Defendants Kenan Investments Inc. d/b/a CMA Flooring & Design d/b/a Carpet Mills of America and Bader M. Obeid)**

66.     Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

67.     Plaintiffs are "consumers" within the meaning of Tex. Bus. & Com. Code § 17.45(4) because they sought and acquired, by purchase, goods and services—a residential kitchen remodel—for personal, family, and household use.

68.     CMA Flooring, acting by and through Mr. Obeid, engaged in false, misleading, and deceptive acts and practices, and unconscionable conduct, in violation of Tex. Bus. & Com. Code §§ 17.46(b) and 17.50, including, among other things: (a) representing that it would perform the contracted remodeling work when it did not intend to or failed to perform; (b) demanding that Plaintiffs open a $25,000.00 credit line as a condition of moving the project forward and then causing the full amount to be charged before performing any work, without authorization; (c) concealing the $25,000.00 charge from Plaintiffs, including in the September 6, 2025 revised contract that made no mention of it; (d) falsely representing to Synchrony that it had fulfilled its responsibilities and submitting invoices reflecting only administrative and preparatory tasks; (e) falsely promising to begin work and to refund Plaintiffs' money, including Mr. Obeid's March 2, 2026 admission of fault and promise of a full refund that was never honored; and (f) retaining $27,500.00 of Plaintiffs' money while delivering no goods and performing no services.

69.     These above actions of Defendants Obeid and CMA Flooring violated the DTPA laundry list, Tex. Bus. & Com. Code §§ 17.46(b)(7) representing that goods or services are of a

14

particular standard, quality, or grade… (9) advertising goods or services with intent not to sell them as advertised; (12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; (22) representing that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced; and (24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

70.    The conduct of CMA Flooring and Mr. Obeid was a producing cause of Plaintiffs' damages, including the $2,500.00 deposit, the $25,000.00 charged to the Synchrony account, deferred interest exposure, and related economic losses.

71.    CMA Flooring and Mr. Obeid acted knowingly and intentionally within the meaning of the DTPA. Plaintiffs are therefore entitled to recover, in addition to their economic damages and attorney fees and costs, damages for mental anguish and treble damages under Tex. Bus. & Com. Code § 17.50(b)(1).

72.    More than sixty days before filing this action, on March 26, 2026, Plaintiffs served CMA Flooring and Mr. Obeid with written pre-suit notice pursuant to Tex. Bus. & Com. Code § 17.505, describing their complaint and damages in reasonable detail. Neither responded.

**COUNT IV**

**BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

**(By Both Plaintiffs Against Defendants Kenan Investments Inc. d/b/a CMA Flooring & Design d/b/a Carpet Mills of America and Bader M. Obeid)**

73.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

15

74.     On or about July 15, 2025, Plaintiffs and CMA Flooring entered into a valid and enforceable written contract for the remodeling of Plaintiffs' kitchen (Invoice No. CG500123), as revised on September 6, 2025 in the amount of $24,850.00.

75.     Plaintiffs performed all of their obligations under the contract. Indeed, through the $2,500.00 deposit and the $25,000.00 charged to Ms. Noor's Synchrony account, CMA Flooring received approximately 110% of the revised contract price before performing any work.

76.     CMA Flooring materially breached the contract by wholly failing to perform: it delivered no kitchen, performed no work, delivered no materials, abandoned the project, and refused to return Plaintiffs' money—even after admitting fault and promising a full refund.

77.     CMA Flooring and Mr. Obeid further breached the duty of good faith and fair dealing in the performance of the contract by, among other things, extracting nearly the full contract price up front, concealing the $25,000.00 charge, stringing Plaintiffs along with false promises of performance and refund, and abandoning the project while retaining Plaintiffs' money.

78.     As a direct and proximate result of these breaches, Plaintiffs have been damaged in an amount of not less than $27,500.00, plus consequential damages, including deferred-interest exposure on the Synchrony account. Plaintiffs are also entitled to recover their reasonable attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code.

**COUNT V**

**BREACH OF CONTRACT**

**(By Plaintiff Noor Against Defendant Synchrony Bank)**

79.     Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

16

80. Ms. Noor's account is governed by the Synchrony Bank Credit Card Account Agreement, a contract between Ms. Noor and Synchrony.

81. In the agreement, Synchrony expressly promises, among other things, that: "You will not be liable for unauthorized use on your account"; that within 90 days of receiving a written billing dispute Synchrony "must either correct the error or explain to you why we believe the bill is correct"; that while it investigates, "[w]e cannot try to collect the amount in question, or report you as delinquent on that amount"; and that if it made a mistake, "[y]ou will not have to pay the amount in question or any interest or other fees related to that amount."

82. Synchrony reiterated these promises in its January 7, 2026 letter to Ms. Noor, which stated: "$0 Fraud Liability. You're never responsible for unauthorized charges."

83. Ms. Noor performed her obligations under the agreement, including by providing timely written notice of the disputed charge.

84. Synchrony materially breached the agreement by, among other things: holding Ms. Noor liable for the full amount of an unauthorized charge; failing to correct the billing error or provide an explanation actually addressing the dispute; and resuming billing and collection of the disputed amount, including minimum-payment demands and interest accrual, while the dispute remained pending and uncorrected.

85. As a direct and proximate result of Synchrony's breaches, Ms. Noor has been damaged, including by being held liable for $25,000.00 plus deferred interest and fees she does not owe.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

17

a.    Declaring that Plaintiff Noor is not liable for the disputed $25,000.00 charge or any interest, fees, or other charges assessed in connection with it;

b.    Awarding Plaintiffs their actual damages, including both pecuniary damages and damages for emotional distress, pain, and suffering;

c.    Awarding statutory damages in the maximum amount permitted by law;

d.    Awarding additional and treble damages for knowing and intentional conduct as permitted by law;

e.    Directing Synchrony Bank to correct Plaintiff Noor's account, to cease all collection of the disputed amount, and to refrain from furnishing derogatory information regarding the disputed amount to any consumer reporting agency;

f.    Awarding Plaintiffs their reasonable attorneys' fees and costs;

g.    Awarding pre-judgment and post-judgment interest as permitted by law; and

h.    Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.


Dated: July 28, 2026

Respectfully submitted,

*/s/ Amy Beth Clark*
Amy Beth Clark
Texas State Bar No. 24043761
Ciment Law Firm, PLLC
400 E. Weatherford St.,
Fort Worth, TX 76102
T: (833) 663-3289
D: (210) 455-1076
E: amy@cimentlawfirm.com

Counsel for Plaintiffs

19

Counsel for Plaintiffs